UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY JOHNS-GRIGGS,

      Plaintiff,

v.

A123 SYSTEMS, LLC,

      Defendant.
_____/

Case No. 19-cv-11162
Hon. Matthew F. Leitman

**<u>ORDER DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 16)</u>**

In this action, Plaintiff Anthony Johns-Griggs claims that his former employer, Defendant A123 Systems, LLC ("A123"), discriminated against him on the basis of his race and fired him when he complained about the racist behavior of one of its employees. (*See* First Am. Compl., ECF No. 12.) Johns-Griggs brought the following claims against A123:

- Racial discrimination in violation of Michigan's Elliot-Larsen Civil Rights Act (the "ELCRA") (Count I);
- Hostile Work Environment in violation of the ELCRA (Count II);
- Retaliation in violation of the ELCRA (Count III);
- Disparate treatment on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count IV);
- Hostile Work Environment in violation of Title VII (Count V); and
- Retaliation in violation of Title VII (Count VI).

1

A123 moved for summary judgment on all of Johns-Griggs' claims on April 29, 2020. (*See* Mot. for Summ. J., ECF No. 16.) The Court held a video hearing on that motion on September 29, 2020. (*See* Notice of Hearing, ECF No. 20.) At the conclusion of the hearing, the Court granted summary judgment in favor of A123 on Johns-Griggs' hostile work environment claims and his racial discrimination claims. (*See* Order, ECF No. 22.) The Court took A123's motion under advisement with respect to Johns-Griggs' retaliation claims (Counts III and VI of the First Amended Complaint). (*See id.*) For the reasons explained below, the Court now **DENIES** A123's motion for summary judgment on Johns-Griggs' retaliation claims.

I

Johns-Griggs' retaliation claims arise out of his firing from A123 on February 6, 2019. Two days before his firing, Johns-Griggs had a confrontation with A123 employee Stephen Thompson. Johns-Griggs says that on that day, he walked into a room where Thompson was seated at a desk. (*See* Johns-Griggs Dep. at 63-64, ECF No. 18-2, PageID.371.) Nobody else was in the room at the time. (*See id.* at 64, PageID.371.) When Johns-Griggs asked Thompson if Thompson had recently seen another A123 employee named Don, Thompson "blew up" and began accosting Johns-Griggs. (*Id.* at 71, PageID.373.) According to Johns-Griggs, Thompson rose from his desk, came within "two or three feet away" from Johns-Griggs, turned "red in the face," and began "screaming." (*Id.* at 74, PageID.374.) Thompson yelled,

2

"[f]uck you, you stupid nigger. You're just a piece of shit like the rest of them. You don't need to be here. We don't need you here." (*Id*. at 71, PageID.373.) Thompson's diatribe "went on for like five minutes." (*Id*.) Johns-Griggs became "pretty upset" and told Thompson that "just because you're having a bad fucking day doesn't mean you can talk to me any way you want." (*Id*. at 72, PageID.373.) Johns-Griggs left the room shortly thereafter. (*See id.* at 76, PageID.374.)

Approximately ten or fifteen minutes after the confrontation with Thompson, Johns-Griggs texted Heather Licari, an employee in A123's human resources department. (*See id.* at 83-84, PageID.376.) Johns-Griggs told Licari that he wanted to report his confrontation with Thompson to A123. (*See id.*) Licari responded by inviting Johns-Griggs to speak with another human resources representative, Jim Beining. (*See id.* at 88, PageID.377.) Johns-Griggs met with Beining later that morning. (*See id.* at 93-94, PageID.379.) Johns-Griggs told Beining about what happened and the racist language that Thompson had used. (*See id.* at 95-96, PageID.379.) Beining told Johns-Griggs that A123 would "look into" the incident, and a few hours later, Johns-Griggs was called back to human resources to submit a "written report" describing the incident. (*Id.* at 96, PageID.379.)

Two days later, Johns-Griggs was fired. Johns-Griggs says that A123 employee John Gamache told him that he was being terminated because of the "altercation with Steve [Thompson]." (*Id.* at 208, PageID.407.)

Gamache and A123 now contend that Johns-Griggs was fired because he had a history of "unsatisfactory unprofessional behavior." (Gamache Dep. at 45, ECF No. 16-5, PageID.257.) A123 has submitted substantial evidence that Johns-Griggs' behavior was an "ongoing" problem. (*Id.*; *see also*, *e.g.*, *id.* at 19-20, PageID.250; Richard Shosey Dep. at 13, 25-26, ECF No. 16-4, PageID.236, 239; Jesse Reed. Dep. at 13, ECF No. 16-7, PageID.272; Matthew Guldner Dep. at 13-14, ECF No. 16-8, PageID.278.)

## II

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326–27 (6th Cir. 2013) (citing Fed. R. Civ. P. 56(a)). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52. Indeed, "[c]redibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255.

### III

### A

Johns-Griggs' only remaining claims are for retaliation under Title VII and the ELCRA. These claims are reviewed under the same standard. *See*, *e.g.*, *Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 463, 482 (6th Cir. 2012) (noting in case where plaintiff brought a retaliation claim under both Title VII and the ELCRA that "the ELCRA analysis is identical to the Title VII analysis"). "Title VII retaliation claims may be proved with direct evidence or by indirect evidence via the *McDonnell Douglas* framework." *Redlin v. Grosse Pointe Public School System*, 921 F.3d 599, 613 (6th Cir. 2019). "Under the latter approach" that applies here, a plaintiff "must first establish a *prima facie* case of retaliation by demonstrating" the following four elements:

> (1) [the plaintiff] engaged in activity protected by Title VII; (2) [the plaintiff's] exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.

*Id.* (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014)). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

5

If the plaintiff "succeeds in making out the elements of a *prima facie* case of retaliation, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the termination[]." *Redlin*, 921 F.3d at 613 (internal punctuation omitted). "If the employer satisfies its burden of production, the burden shifts back to [p]laintiff to show that the reason was a pretext for retaliation." *Id.* (internal punctuation omitted). In retaliation cases, a plaintiff may "rel[y] on the same evidence to establish a *prima facie* case and to rebut a proffered legitimate, non-discriminatory reason for [] termination." *Cantrell v. Nissan North America, Inc.*, 145 F. App'x 99, 107 n.2 (6th Cir. 2005) (explaining that in retaliation cases, "[t]he overlap between the causal connection requirement and a showing that the proffered reason for termination was not the actual reason is implicitly recognized in our case law, which permits both to be proven by the same type of evidence").

## B

The Court concludes that A123 is not entitled to summary judgment on Johns-Griggs' claim that it retaliated against him in violation of Title VII and the ELCRA when it fired him.

The Court begins at step one of the *McDonnell Douglas* framework: whether Johns-Griggs has established a *prima facie* case of retaliation. The first three elements of the *prima facie* standard are not in serious dispute. First, Johns-Griggs has presented sufficient evidence that he engaged in a protected activity. As

described above, he has presented evidence that he filed a complaint with A123's human resources department in which he complained about the racial hostilities directed toward him by one of A123's employees. Second, he has shown that A123 knew of his complaint. Third, A123 took an adverse employment action against Johns-Griggs when it terminated his employment.

The final element of the *prima facie* test – whether there was a causal connection between Johns-Griggs' protected activity and his firing – is seriously disputed. One of the factors that a court considers when determining whether a causal connection exists is the "temporal proximity" between the protected activity and adverse action. *Kirilenko-Ison v. Bd. of Educ. of Danville Independent Schools*, 974 F.3d 652, 665 (6th Cir. 2020). "In some circumstances, an inference of causation may arise solely from the closeness in time between the point at which an employer learns of an employee's protected activity and the point at which it takes an adverse action against that employee." *Id.* That is the case here. As described above, Johns-Griggs was fired just two days after he filed his complaint with human resources. That closeness in time between Johns-Griggs' protected activity and the termination of his employment is sufficient, standing alone, to satisfy Johns-Griggs' burden at the *prima facie* stage. *See, e.g., Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 284 (6th Cir. 2012) ("Seeger has shown causality by a preponderance of the evidence through close temporal proximity that is suggestive of retaliation.");

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (same). But even if temporal proximity was not enough on its own,[1] Johns-Griggs has presented additional evidence of causation. For example, in the months prior to his firing, Johns-Griggs received several raises that amounted to a near doubling of his pay. (*See* ECF No. 18-3, PageID.443.) These raises support an inference that Johns-Griggs was a high-performing and properly-behaving employee. Indeed, one would not expect an employer to give raises to an employee who repeatedly caused problems. The raises thus support an inference that Johns-Griggs' firing could not have been related to his performance and/or behavior and must have been caused by his complaint to human resources. Johns-Griggs has also presented evidence that he was assigned substantial overtime. (*See* ECF No. 18-5, PageID.455.) As with his raises, it could reasonably be concluded that an employer would not permit a badly behaving employee to work overtime. Therefore, that Johns-Griggs was repeatedly permitted to work overtime supports an inference that his firing was not based on poor performance and/or prior bad behavior and must have been based on his complaint. The Court recognizes that A123 has presented substantial contrary

---

[1] In another decision handed down around the same time at *Kirilenko-Ison*, *supra*, the Sixth Circuit said that while "temporal proximity ... is relevant to the question of whether there exists a causal connection between two events, it is not dispositive." *Garza v. Lansing School District*, 972 F.3d 853, 868 (6th Cir. 2020). Even under that standard, A123 is not entitled to summary judgment because, as explained above, Johns-Griggs has identified evidence of causation in addition to temporal proximity that satisfies his burden at the *prima facie* stage.

evidence on all of these issues and that that evidence may well be highly persuasive to a jury. But at the *prima facie* stage, Johns-Griggs' burden is "not onerous" and "easily met." *Nguyen*, 229 F.3d at 563. He has satisfied that burden here.

Next, at step two of the *McDonnell Douglas* test, A123 has presented a facially legitimate reason for Johns-Griggs' discharge – his "ongoing" behavioral and conduct issues. (Gamache Dep. at 45, ECF No. 16-5, PageID.257.)

Finally, at step three, Johns-Griggs has presented sufficient evidence that A123's reasons for his firing were pretextual. A plaintiff-employee usually shows pretext in one of three ways. "The plaintiff may show that (1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 545 (6th Cir. 2008). As explained above, Johns-Griggs' raises and the amount of overtime that he was assigned both support an inference that Johns-Griggs was a high-performing and appropriately-behaved employee and thus that A123 would not have (and did not) fire him based on performance and/or behavioral problems. When this evidence is considered in the light most favorable to Johns-Griggs, it is sufficient to support a finding that A123's proffered reasons for firing Johns-Griggs were not the actual reasons he was fired.

For all of the reasons explained above, Johns-Griggs has presented sufficient evidence under the *McDonnell Douglas* framework to go forward with his Title VII and ELCRA retaliation claims. The Court therefore denies summary judgment in favor of A123 on those claims.

## IV

The questions before the Court in connection with A123's motion are not whether Johns-Griggs has strong claims or whether he is likely to prevail at trial. If those were the questions, the Court may very well have granted A123's motion. The sole question before the Court is whether the evidence, when viewed in the light most favorable to Johns-Griggs, creates a genuine dispute of material fact with respect to the essential elements of his retaliation claims and with respect to A123's defenses. For all of the reasons explained above, it does. Accordingly, A123's motion for summary judgment is **DENIED** with respect to Johns-Griggs' retaliation claims (Counts III and VI of the First Amended Complaint). Those claims – and only those claims – will be presented to a jury at trial.

    **IT IS SO ORDERED**.

                                              s/Matthew F. Leitman  
                                              MATTHEW F. LEITMAN  
                                              UNITED STATES DISTRICT JUDGE

Dated:  January 13, 2021

      I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 13, 2021, by electronic means and/or ordinary mail.

                                                s/Holly A. Monda  
                                                Case Manager  
                                                (810) 341-9761